

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-19-00119-CV

**INFINITY COUNTY MUTUAL INSURANCE COMPANY**,
Appellant

v.

Michael **TATSCH**,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 12977
Honorable N. Keith Williams, Judge Presiding

## OPINION ON EN BANC RECONSIDERATION

Opinion by:     Luz Elena D. Chapa, Justice
Dissenting Opinion by: Patricia O. Alvarez, Justice (joined by Sandee Bryan Marion, Chief
                       Justice and Rebeca C. Martinez, Justice)

Sitting en banc: Sandee Bryan Marion, Chief Justice
                 Rebeca C. Martinez, Justice
                 Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice
                 Irene Rios, Justice
                 Beth Watkins, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: December 23, 2020

REVERSED AND REMANDED, MOTION TO DISMISS DENIED

        We previously granted en banc reconsideration. We now withdraw the panel's opinions

and judgment in this case and substitute today's opinions and judgment in their stead.

## INTRODUCTION

Infinity County Mutual Insurance Company appeals a money judgment rendered in Michael Tatsch's favor for breaching an auto insurance contract. The trial court determined Infinity's liability on traditional cross-motions for summary judgment. Because neither party satisfied its respective burden to conclusively establish all material facts to determine liability as a matter of law, we reverse the judgment and remand the case for further proceedings.

## BACKGROUND

Tatsch purchased from Infinity a comprehensive auto insurance policy for coverage on his commercial truck. As outlined in this policy, Infinity agreed to pay for any loss not excluded by the policy. Tatsch's truck broke down and would not restart. Mechanics determined the fuel system needed replacing and contaminated fuel had damaged the engine. The fuel system was replaced under a warranty, but the warranty did not cover the engine damage.

Tatsch called Infinity to make an insurance claim for the engine damage. Infinity denied Tatsch's claim and sent a letter explaining its decision. The letter stated in relevant part:

> The vehicle damage occurred due to poor quality fuel being added to the vehicle which caused mechanical failure to your insured vehicle. There is an applicable exclusion in Your Texas Commercial Auto Policy that states we do not provide comprehensive coverage for damages resulting from mechanical failure.

This explanation states contaminated fuel caused the damage, and the contaminated fuel and/or damage "caused mechanical failure." Infinity's letter quoted the auto policy's mechanical breakdown exclusion, which applies when mechanical breakdown causes damage.

Tatsch sued Infinity and other defendants. The trial court granted summary judgment against Tatsch, and we reversed the judgment in part and remanded. *See Tatsch v. Chrysler Grp., LLC*, No. 04-13-00757-CV, 2014 WL 6808637 (Tex. App.—San Antonio Dec. 3, 2014, pet.

denied) (mem. op.). On remand, Tatsch alleged a breach of contract claim against Infinity.[1] Infinity generally denied Tatsch's allegations, but specifically admitted Tatsch had an auto policy with Infinity. Infinity also specifically alleged the loss for which Tatsch sought coverage was excluded by the policy's mechanical breakdown exclusion.

The parties filed traditional cross-motions for summary judgment as to whether Infinity breached its contractual obligation to pay for covered losses. The trial court denied both motions. Both Infinity and Tatsch filed "renewed" traditional cross-motions as to whether the policy excluded coverage for the engine damage. The parties agreed to the amount of damages to which Tatsch would be entitled if the loss were not excluded, but disputed Infinity's liability. The trial court rendered a final "agreed" judgment, and Infinity timely appealed.[2]

### STANDARD & SCOPE OF REVIEW

We review summary judgments de novo. *Gemini Ins. Co. v. Drilling Risk Mgmt., Inc.*, 513 S.W.3d 15, 19 (Tex. App.—San Antonio 2016, pet. denied). To prevail on a traditional motion for summary judgment, a movant must show there is no genuine issue of material fact and conclusively establish the movant's entitlement to judgment as a matter of law. *See id.* "When there are competing summary judgment motions on the same issues, . . . we consider the summary judgment evidence presented by both sides and determine all questions presented, and, if we determine the trial court erred, we render the judgment the trial court should have rendered." *Id.*

The parties do not cite any authority, and we have found none, governing the scope of review for "renewed" motions for summary judgment, and whether such motions are considered

---

[1] Infinity did not argue in the trial court and does not argue on appeal that Tatsch's breach of contract claim improperly exceeded the limited scope of remand. Because this matter is not jurisdictional, we need not address it sua sponte. *See Phillips v. Bramlett*, 407 S.W.3d 229, 234 (Tex. 2013).

[2] Tatsch filed a motion to dismiss this appeal, arguing Infinity agreed to the judgment. Because Infinity challenges only liability on appeal, and that part of the judgment was disputed and not agreed to in the trial court, we deny Tatsch's motion to dismiss.

entirely new motions, amended motions that supplant the original motions, supplemental motions that add to the original motions, or motions to reconsider the original motions. The intent of the parties is not clear from the renewed motions themselves. Similarly, the final judgment does not state whether the trial court granted summary judgment on the renewed motions, on the original motions, or some combination thereof. We will review the renewed motions alone. In an abundance of caution, we will also review the original motions.

DISCUSSION

The sole issue presented in the parties' cross-motions and raised on appeal is whether the auto policy's mechanical breakdown exclusion applies to the engine damage. The parties do not dispute the meaning of the exclusion, only how the exclusion applies to the facts of this case. Nevertheless, determining whether the exclusion applies requires construing provisions of the insurance policy.

**A. Construing Insurance Policies**

"An insurance policy is construed according to the same rules of construction applied to contracts generally." *Id.* at 21. We "focus on the plain language of the policy and give the words and phrases their ordinary and generally accepted meaning, unless otherwise specified." *Id.* "The words and phrases are read in context of the policy as a whole, giving effect to all of the words and provisions so none is rendered meaningless." *Id.* "Language that can be given a certain or definite meaning is not ambiguous, and is construed as a matter of law." *Id.* Neither party argues the mechanical breakdown exclusion is ambiguous, and we do not otherwise reach this conclusion. We therefore construe the insurance policy as a matter of law. *See id.*

## B. The Mechanical Breakdown Exclusion

The policy at issue is a commercial auto policy that lists the damaged truck as an insured vehicle. The policy contains Part E, which covers damage to Tatsch's truck and certain mechanical parts. Part E provides as follows:

**PART E – COVERAGE FOR DAMAGE TO YOUR INSURED AUTO**

**INSURING AGREEMENT**
If **you** pay a specific premium for this coverage, **we** will pay for **loss** to **your insured auto**, including its factory-installed, permanently attached equipment which is considered standard for **your insured auto**, caused by:

1. **Collision**;
2. **Comprehensive**; or
3. **Fire and Theft with Combined Additional Coverage**

less any applicable deductible shown on the Declarations for each separate **loss**.

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY**
. . . .
4. **"Collision"** means impact of **your insured auto** with another object or upset of **your insured auto**. . . .
5. **"Comprehensive"** means **loss** other than that caused by **collision**.
. . . .
9. "**Loss**" means direct and accidental loss of or damage to **your insured auto**, including its equipment which is permanently installed at the factory by the original make and model manufacturer and considered standard equipment for such vehicle. . . .
. . . .

**EXCLUSIONS**

**READ THE FOLLOWING EXCLUSIONS CAREFULLY. COVERAGE WILL NOT BE AFFORDED UNDER THIS PART FOR ANY OF THE EXCLUSIONS LISTED BELOW.**

**We** do not cover **loss**:
. . . .
5. Resulting from or caused by any of the following, unless caused by other **loss** that is covered by this insurance policy:
    a. Prior **loss** or damage;
    b. Manufacturer's defects;
    c. Wear and tear;
    d. Freezing;

e.  Mechanical or electrical breakdown or failure; or

f.  Blowouts, punctures, or other road damage to tires.

The operative language in the exclusion is the following: "We do not cover loss . . . resulting from or caused by . . . Mechanical . . . breakdown or failure."

The policy expressly defines "we" as Infinity, and "loss" as including "damage to [the truck], including its [factory-installed engine]." The policy does not define "mechanical breakdown or failure." The plain meaning of "mechanical" is "of or relating to machinery or tools." *See Mechanical*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/mechanical (last visited Dec. 3, 2020). "Breakdown" is "a failure to function." *See Breakdown*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/breakdown (last visited Dec. 3, 2020). And "failure" is "an abrupt cessation of normal functioning" or "a state of inability to perform a normal function." *See Failure*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/failure (last visited Dec. 3, 2020). Read in context of the policy's definitions and the plain meaning of undefined words, the mechanical breakdown exclusion effectively provides as follows: Infinity does not cover engine damage resulting from or caused by a machine not working properly. For the engine damage to be excluded, the plain language of the policy therefore requires establishing the engine damage either resulted from or was caused by some mechanical part not working properly.

**C. Tatsch's Renewed Motion**

Because Tatsch prevailed in the trial court, we begin our de novo review with Tatsch's renewed motion. Tatsch's renewed motion expressly argued Infinity breached the insurance policy "because Infinity's reliance [on] the policy's 'mechanical breakdown' exclusion fails as a matter of law." Applying our standard of review and the plain language of the insurance policy, Tatsch had the initial summary judgment burden to conclusively establish that the damage to his truck's

engine did not result from and was not caused by a machine not working properly. *See Gemini*, 513 S.W.3d at 19.

In support of his renewed motion, Tatsch attached the auto policy, Infinity's letter explaining its denial of Tatsch's claim, and an affidavit he executed. Infinity's letter stated: "The vehicle damage occurred due to poor quality fuel being added to the vehicle which caused mechanical failure to your insured vehicle." In his affidavit, Tatsch swore his truck stopped working, and he was informed "there was water in the fuel and that the fuel system would need to be cleaned and filters would need to be replaced." He further swore the fuel system was replaced under warranty, but "the engine was knocking," so he sought further repairs. Tatsch stated "Burns Motors informed me the cause of the damage was fuel contamination" and the repair was not covered under the warranty. Tatsch then explained he reported the cause of the damage to Infinity, and Infinity denied coverage based on his explanation without any further investigation.

Tatsch's evidence does not describe the engine damage, other than stating the engine was "knocking." Tatsch's evidence also shows damage to the fuel system was discovered and addressed first. Although Tatsch's evidence establishes contaminated fuel was a cause of damage to the truck, neither Infinity's letter nor Tatsch's affidavit clearly, positively, and directly: (1) shows the contaminated fuel caused the damage directly to the truck's engine; and (2) rules out the malfunctioning of some machine, such as the fuel system, as an additional or preceding cause of the engine damage. *See Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) (noting the uncontradicted testimony of an interested witness may conclusively establish facts if it is clear, positive, direct, and free of contradiction). Because Tatsch's renewed motion fails to conclusively rule out mechanical breakdown or failure as a cause of the engine damage, the trial court erred by concluding Tatsch's renewed motion established Infinity's liability as a matter of law.

**D. Infinity's Renewed Motion**

We next determine whether Infinity's renewed summary judgment motion conclusively negated its liability as a matter of law. *See Gemini Ins.*, 513 S.W.3d at 21. Infinity's motion expressly argued "[t]he policy contains an exclusion that removes losses resulting from or caused by mechanical breakdown or failure from coverage." In support of the motion, Infinity also produced the policy, its letter denying Tatsch's claim, and Tatsch's affidavit. As explained above, this evidence does not establish all facts necessary to determining whether the exclusion applies.

Infinity also produced a short excerpt from Tatsch's deposition, and its notes from when Tatsch called to make his claim. In his deposition, Tatsch testified his truck "just died" without any signs or warning immediately after he refueled the truck. Tatsch also complained about how mechanics handled the truck when they were diagnosing problems with the fuel system:

> They said it's just a fuel filter and I would be up and running. And I said, well, tell them to spin one on there. Then they went from that, replacing another fuel filter, to contaminated fuel, to taking my tank off, emptying it. Then we went from injectors to injector pump. And these guys were smart enough to start my truck on one injector, which is not possible. Then it went to two injectors, which ain't possible after they blocked them. And I told them they needed to call NASA or whatever, but I would haul my truck somewhere else to get worked on.
> I mean, they cranked on this truck for no telling how long. Had a pile of sludge bigger than this table sitting on the floor underneath it. Had the air filter off, the headlights were black from cranking on my truck so much from the intake.

The notes from Tatsch's call states Tatsch reported he stopped to refuel his truck, his truck "just broke down," and he took his truck to a dealership and "had 6 bad injectors."

By suggesting mishandling by mechanics, Infinity's evidence introduces a different theory of what possibly caused the engine damage. Infinity argues this case is like *American Graphics, Inc. v. Travelers Indemnity Co.*, which involved improper maintenance. 17 Fed. Appx. 787, 792 (10th Cir. 2001). But Infinity's evidence does not further show what the engine damage is or that mishandling by mechanics actually caused that damage. As with Tatsch's evidence, Infinity's

summary judgment evidence fails to conclusively establish: (1) the nature of the engine damage; and (2) whether malfunctioning of some machine was a cause of the engine damage. Thus, Infinity's renewed summary judgment motion does not negate its liability as a matter of law.

**E. The Original Motions**

Our conclusions would not change by considering the parties' original summary judgment motions and evidence. In addition to the evidence described above, Tatsch produced four pages of his deposition testimony with his original motion. None of Tatsch's deposition excerpts further explains the nature of the engine damage or excludes mechanical breakdown or failure as a cause of the engine damage. Infinity produced additional excerpts from Tatsch's deposition with its original motions, but those excerpts similarly lack conclusivity.

In the additional excerpts Infinity produced, Tatsch described the knocking as a "low end knock," without further explanation. He also testified he was informed the engine was "dusted," but did not describe what a "dusted" engine is. The deposition excerpts contain questions by counsel asking Tatsch about a "dust out" condition, and counsel explained what a "dust out condition" is, but Tatsch did not answer the questions, and an attorney's unsworn statements are not considered competent evidence. *Cf. Henry S. Miller Co. v. Hamilton*, 813 S.W.2d 631, 635 (Tex. App.—Houston [1st Dist.] 1991, no writ). Tatsch testified he could not recall the results of the fuel analysis, but recalled being informed of "possible presence of kerosene or a cleaning solvent." The evidence produced with the original motions did not conclusively establish the nature of the engine damage, or what—if anything other than contaminated fuel—damaged the truck's engine. We would therefore reach the same conclusions regardless of whether we were to consider the original motions and evidence in our scope of review.

**F. Infinity's & Tatsch's Arguments as to Liability as Matter of Law**

By submitting the issue of Infinity's liability to the trial court on traditional cross-motions for summary judgment, the parties have sought to have Infinity's liability determined as a matter of law based on undisputed facts. Tatsch argues that because Infinity denied coverage based on contaminated fuel causing the engine damage, then contaminated fuel was the only cause of the engine damage. Infinity argues that because the evidence conclusively establishes there is engine damage, and the engine does not work, then there is mechanical breakdown and failure. Infinity suggests the existence of the engine's mechanical breakdown and failure, in and of itself, means the damage to the engine is a loss automatically excluded by the mechanical breakdown exclusion, even if mechanical breakdown is an effect, rather than a cause, of the engine damage. This argument mirrors the position Infinity took in its letter denying Tatsch's claim. Considering the plain language of the policy and the evidence produced, the parties' arguments regarding Infinity's liability being determined as a matter of law are untenable on this summary judgment record.

The parties' mere agreement that an issue can be decided as a matter of law on undisputed facts does not mean that, applying the appropriate applicable law and standards of review, the evidence before the court is actually undisputed or the undisputed facts presented are sufficient for a court to decide the issue as a matter of law. *See, e.g.*, *White v. Moore*, 760 S.W.2d 242, 243 (Tex. 1988) ("Despite the parties' agreement that the will is unambiguous as a matter of law, we conclude otherwise and therefore reverse the summary judgment."). And, the filing of traditional cross-motions for summary judgment does not permit a court to engage in factfinding or to supply missing material facts by presumption or surmise. *See Chavez v. Kan. City S. Ry. Co.*, 520 S.W.3d 898, 900 (Tex. 2017) (holding reliance on evidentiary presumptions are improper for summary judgment); *see, e.g.*, *Grynberg v. Grey Wolf Drilling Co.*, 296 S.W.3d 132, 133–40 (Tex. App.— Houston [14th Dist.] 2009, no pet.) (reversing and remanding when reviewing cross-motions for

summary judgment because neither party presented sufficient evidence for summary judgment). For a trial court to engage in such factfinding, the case must be submitted to the court at a bench trial. *See Lemus v. Aguilar*, 491 S.W.3d 51, 59 (Tex. App.—San Antonio 2016, no pet.) (noting the trial court may engage in factfinding by judging witness credibility in a bench trial).

For the mechanical breakdown exclusion to apply and bar coverage for the engine damage, the engine damage must have resulted from or been caused by some machine not working properly. The language of the policy plainly requires some machine not working properly to be a cause of or result in damage to the engine. *See State Farm Lloyds v. Marchetti*, 962 S.W.2d 58, 61 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) (construing an insurance policy exclusion's use of the phrase "caused by or resulting from" as requiring consideration of causation). As with causation in other contexts, the plain language of the mechanical breakdown exclusion requires proof of more than an event and a condition; it requires a traceable connection between the producing event (some mechanical part not working properly) and the resulting condition (the engine damage). *Cf. Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex. 1984). As an analogy, proving a car accident caused a driver's neck injury requires more than the existence of a car accident and a neck injury; causation requires proving the neck injury is traceably connected to the car accident. *See, e.g.*, *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015).

The undisputed evidence establishes the existence of mechanical failure because the engine and fuel system stopped working properly. The undisputed evidence also establishes the existence of engine damage. But proving that mechanical failure caused the engine damage requires more than the existence of mechanical failure and engine damage. The plain language of the mechanical breakdown exclusion requires proving the engine damage is traceably connected to the engine and fuel system not working properly. The mere fact that these mechanical parts stopped working

properly does not establish that any and all damage to the engine resulted from or was caused by these parts not working properly.

Indeed, it is possible for mechanical failure to be an effect—and not a cause—of engine damage, as Infinity suggested in explaining its denial of coverage: "The vehicle damage occurred due to poor quality fuel being added to the vehicle *which caused mechanical failure* to your insured vehicle" (emphasis added). Infinity's original explanation for denying coverage acknowledged mechanical breakdown was not the cause of engine damage, but rather was the effect or result of contaminated fuel and/or vehicle damage. However, the auto policy does not exclude all losses "relating to," "consisting of," or "when there is" mechanical breakdown or failure; the exclusion only applies to damage "resulting from" or "caused by" mechanical breakdown or failure.

Infinity's only explanation as to how mechanical failure caused the engine damage is based on evidence showing the truck broke down and, after the fuel system was replaced, the engine was knocking. Infinity suggests that because the truck broke down before the engine damage was discovered, then the breakdown must have damaged the truck's engine. Infinity produced no expert testimony explaining how the breakdown of the truck or the fuel system damaged the engine. Although "[l]ay testimony is adequate to prove causation" the testimony must be based on "general experience and common sense [that] will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Morgan*, 675 S.W.2d at 733. Infinity produced no lay testimony that would enable other laymen to determine, with reasonable probability, that the breakdown of the truck or fuel system caused the engine damage. Furthermore, "[c]are must be taken to avoid [assuming] an earlier event caused a later event merely because it occurred first. Stated simply, correlation does not necessarily imply causation." *Jelinek v. Casas*, 328 S.W.3d 526, 533 (Tex. 2010). So, just because the truck broke down and the fuel

system failed before the engine damage was discovered does not mean the fuel system broke down and thereby caused or resulted in the engine damage, whatever that damage might be.

Conversely, Tatsch posits that because contaminated fuel was *a* cause of the engine damage, it was the *only* cause of the engine damage, and mechanical failure was not also a cause of the engine damage. But vehicle damage may have more than one cause. *Cf. Windrum v. Kareh*, 581 S.W.3d 761, 778 (Tex. 2019) (noting an injury may have more than one proximate cause). Because the evidence does not show the nature of the engine damage, it is possible the contaminated fuel directly damaged the truck's engine and fuel system. But it is also possible the contaminated fuel caused mechanical parts to not work properly, which then caused or resulted in the engine damage. The summary judgment evidence, without detail, simply shows the engine is damaged, the engine does not work, and contaminated fuel played some role in causing the damage. The summary judgment evidence also raises different theories of how the engine was damaged, including direct damage by fuel contaminants, mishandling by mechanics, and a breakdown of the fuel system. Because the summary judgment evidence does not conclusively show the nature of engine damage and whether the damage resulted from or was caused by mechanical breakdown or failure, neither party is entitled to summary judgment based on the evidence presented to the trial court.

## CONCLUSION

The trial court erred by rendering summary judgment in Tatsch's favor. We therefore reverse the trial court's judgment. Nevertheless, Infinity's cross-motion failed to establish its entitlement to a rendition of judgment in its favor. Consequently, we must remand the case for further proceedings.

Luz Elena D. Chapa, Justice